Opinion by TILSON, J. Following the authorities cited in Abstract 15400 the court dismissed the protests.

**No. 52438.**—Frank Allaire Co., Inc., et al. *v.* United States; protests 53719-K, etc. (New York).

Opinion by TILSON, J. Following the authorities cited in Abstract 15400 the court dismissed the protests.

**No. 52439.**—T. A. Desmond & Co., Inc., et al. *v.* United States, protests 134288-K, etc. (New York).

Opinion by TILSON, J. Following the authorities cited in Abstract 15400 the court dismissed the protests.

BEFORE THE THIRD DIVISION, JUNE 30, 1948

**No. 52440.**—Kokusai Suisan Kabushiki Kaisha et al. *v.* United States, protests 50290-K, etc. (Los Angeles).

Opinion by CLINE, J. In accordance with stipulation of counsel that the merchandise is similar in all material respects to the frozen frogs the subject of *Pacific Trading Co.* v. *United States* (8 Cust. Ct. 221, C. D. 610), the claim at 10 percent under paragraph 1558 was sustained.

**No. 52441.**—The J. L. Hudson Company *v.* United States, protests 46370-K, etc. (Detroit).

Opinion by EKWALL, J. In accordance with stipulation of counsel the court found that the facts herein agreed upon were such as to bring the case within the holding in *John Barr* v. *United States* (11 Cust. Ct. 88, C. D. 801), which record was incorporated herein. (See *John Barr* v. *United States*, 324 U. S. 83.) In accordance therewith it was held that the currency of the invoices should be converted at the buying rate in the New York market at noon on the day of exportation (the "free" rate of exchange for pounds sterling), as certified by the Federal Reserve bank and set forth by the collector on each of the entries involved. The protests were sustained to this extent.

**No. 52442.**—Haspel Brothers, Inc. *v.* United States, protests 61767-K/12392 and 61766-K/12385 (New Orleans).

Opinion by EKWALL, J. In accordance with stipulation of counsel the court found that the facts herein agreed upon were such as to bring the case within the

holding in *John Barr* v. *United States* (11 Cust. Ct. 88, C. D. 801), which record was incorporated herein. (See *John Barr* v. *United States*, 324 U. S. 83.) In accordance therewith it was held that the currency of the invoices should be converted at the buying rate in the New York market at noon on the day of exportation (the "free" rate of exchange for pounds sterling), as certified by the Federal Reserve bank and set forth by the collector on each of the entries involved. The protests were sustained to this extent.

**No. 52443.**—Mauro Bernal *v.* United States, protests 124457–K and 124458–K (San Francisco).

EKWALL, Judge: These two cases have been consolidated and tried together. They involve the same entry but not the same issue. In protest No. 124457–K, plaintiff claims that the appraisement, particularly as it covers 16 boxes of cotton stockings, is illegal and void. Therefore, it is contended the matter should be remanded to a single judge for the purpose of reappraisement. (See section 501, Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.) Protest 124458–K is directed against the collector's refusal to reliquidate on the ground of clerical error, which it is alleged occurred when the *pro forma* invoice was prepared.

It appears that entry of the merchandise involved, i. e., 16 boxes of cotton stockings imported from Mexico, was made by a firm of customs brokers at the port of San Francisco upon the basis of a *pro forma* invoice which was prepared from a commercial invoice in the absence of a consular form of invoice. Mr. James J. Connors, the clerk of the customs brokerage firm, testified that he prepared the entry and that he made up the *pro forma* invoice from the commercial invoice, which was made out in the Spanish language and was furnished to him by the importer. Mr. Connors did not understand Spanish and another employee in the office interpreted the commercial invoice. Upon this basis, he typed on the *pro forma* invoice the following: "16 boxes containing 6 pair cotton stockings each." He also typed in the total amount, "$363." He used a unit value of $60.50 each pair. His testimony as to the method by which he arrived at said unit value is as follows:

The importer had given us the commercial invoice, and showed a total value of $363.00, and in making up the *pro forma* invoice I attempted to get a unit value, and in making it up, I made an error of putting $60.50 each pair. I had divided different numbers into the total of $363.00 to see what seemed to be the most logical unit value I could get, and the only thing I could have done, I divided six pair into $363.00 and got $60.50, and put that down instead of the amount that actually was the true unit value.

On the entry, the item in dispute is described as:

16 boxes containing 6 pair cotton stocking each

Above this description appears in pen and ink the number of the commodity "3110.000," and the net quantity in units "8 doz. Pr.," the entered value being given as U. S. $75. In the lower left-hand corner of said entry the net invoice value is given as $896.60, to which is added the sum of $7.89 for taxes, making a net entered value of $904.49. From the notation appearing directly above these figures, i. e., "Mexican Peso at .205820," we gather that the amounts stated in this notation are expressed in Mexican dollars.

On the Summary of Examination and Appraisement we find a red check mark under the column "Appraised," which is explained in the printed matter directly above the respective columns of the form as follows:

A check mark (√) in the appropriate column below indicates that—(a) the appraised value agrees with the entered value as represented by the information set forth on the invoice and in any importer's notations endorsed thereon or attached thereto; * * *